JUANITA MACHUCA DE DURAND, ETC., ET AL., Plaintiffs and Appellees, *v.* PUERTO RICO WATER RESOURCES AUTHORITY, Defendant and Appellant.

No. 9201.   Argued February 6, 1946.—Decided May 24, 1946.

---

*James E. Curry, Gabriel Guerra-Mondragón, Antonio M. Bird,* and *José Vilá Ruiz* for appellant. *J. Alemañy Sosa* for appellees.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The defendant appeals from a judgment ordering it to pay to the plaintiffs the amount of $5,000 for damages, costs, and $300 for attorney's fees. The facts are as follows:

About October 14, 1943, the Weather Bureau announced that a hurricane would hit the western part of the Island possibly affecting the City of Mayagüez. A little before noon of that same day, strong winds accompanied by rain began to blow in said city. As a consequence of the wind, the lines of the defendant company broke at some places and started to make contact with each other, emitting sparks and causing several fire alarms in the city. Several commissions of civic institutions visited the electric plant and asked that the electric service be shut off in order to avoid a chaos in the city and other fire alarms, but they were informed that the local station of the defendant had to wait for superior orders to discontinue the service. Late in the afternoon the electric service was finally shut off but resumed later causing other fire alarms.

At about 9 o'clock in the evening a fire occurred in the ward of Balboa, Mayagüez, and fire engine No. 3 went directly to the place. Two wires belonging to the defendant had fallen on an almond tree, at about twelve feet from the

ground, sparkling and swaying with the wind. José Vicente Durand, who went to the place with the firemen, got near the tree with a *"machete"* and upon touching it with his left hand died electrocuted. Durand was a salesman in a shoe store known as "La Favorita" and had been a member of the Civilian Defense and, although at the time of his death he was not a member *de jure* of said organization, he had continued acting as assistant fireman, which was the position he had in the Civilian Defense, with the approval and consent of the chiefs of the fire department.

The widow brought the present action for damages in her own behalf and in representation of her minor daughters, born of her marriage with the deceased. The defendant alleged contributory negligence on the part of the deceased and the District Court of Mayagüez rendered the aforesaid judgment.

The defendant appealed and assigned the following errors:

I.—The lower court committed manifest error in weighing the evidence in deciding:

(*a*) that there was hardly any interruption in the electric service, and

(*b*) that no inspection was made before resuming the service.

II.—The lower court committed manifest error in holding that the proximate cause of the accident was the fault and negligence of the defendant and not the rash and reckless act of plaintiffs' predecessor.

The first assignment of error, in its two subdivisions, is nonexistent. Whether the interruption of service that afternoon was long or short, does not affect the main question involved in this case, inasmuch as defendant itself admitted that plaintiffs' predecessor died as a consequence of the electrocution caused by one of its lines and that at the time of his death, in the evening, the electric service had been re-

sumed. As to the fact that no inspection whatsoever was made before resuming the service, there is no showing that the lines were inspected or repaired during the time that the service was interrupted in the afternoon. What was revealed by defendant's own evidence was that while the current was turned on a crew of men were inspecting the lines and making simple repairs; that when the service was turned off a meeting of all the personnel was held on that evening in order to determine how the inspection was to be carried out on the following day; at that same meeting engineer Gandía suggested that they should try giving light to the city, which was done, without having made any inspection and the current was maintained although they knew that they had not inspected or located several lines which had been damaged. In other words, the inspection and the simple repairs were made before the interruption of the service and before the storm ceased. Notwithstanding this, the current was turned on without determining whether or not there was any danger. The evidence supports the conclusions reached by the court. The first error, therefore, was not committed. Let us see as to the second.

■ The evidence shows that defendant was negligent. Although it was aware that its lines had suffered damages and that by reason thereof there had been several fire alarms, it transmitted the current into its lines. That it knew of the damages occurred is shown not only by the testimony of plaintiffs' witnesses, Mayor Barreto, and representative Báez, but also by the testimony of its own employee, Mr. Francisco Piñeiro, who was in charge of operating the switchboard in defendant's plant and who testified that as the storm increased the switches of the board fell off and that he had to replace them; that switches fall off when lines are crossed, which is caused by the falling of a tree or limb on the wires or when a wire touches another; that the switches fell off many times "and that there was a time when they fell

off, were replaced but would not stay on by themselves'' because "the switch stays on when, for example, a branch of a tree falls momentaneously on the wire. The switch falls off but when it is connected again it usually stays on. But when there is a perfect crossing the switch never stays put no matter how often it is connected''; he explained that when he worked for the Mayagüez Light (defendant's predecessor) he had received orders that when a switch fell off three times he should not connect it again.

Although the constant falling of the switches showed that there were perfect crossings and damaged lines, the defendant, after having disconnected the service for two or three hours, again connected it without inspecting its lines or without having repaired them. Nothing was done to ascertain whether upon resuming the service there existed any danger, even though it should have realized that there was danger because, according to the evidence, the switches did not stay on and again there were telephone calls informing of other short circuits and fire alarms. Notwithstanding this, the defendant transmitted the current until it learned of the death of plaintiffs' predecessor. It was then that it completely shut off the service until the following morning.

A company that acts as defendant did in the case at bar is guilty of negligence and is liable if by reason thereof it causes damages. It was the duty of the defendant, in view of the warnings of the commissions which visited the plant and of the signals which its own mechanical appliances, the switches, gave out, not only to interrupt the current in its lines, but also to inspect them and make the repairs in those places where the damages had been caused before turning it on again. The failure to do this was the cause of the fire in ward of Balboa when two wires of the defendant fell on a tree, and remained hanging twelve feet from the ground transmitting the current into the tree.

■ Appellant contends that the breaking of the wires was due to a God's act and for that reason it is not liable. It is true that the damages in the lines were due to the storm, however, the negligence of the defendant arose after the storm, that is, when it failed to shut off the current although it was fully aware of the danger that existed in continuing to transmit said current into its lines without having inspected or repaired them. If due to lack of time or for any other reason it could not have done the latter it should have interrupted the services until it was in a position to do so. The life and safety of the people of the City of Mayagüez required that this be done.

■ Defendant maintains that the contributory negligence of plaintiffs' predecessor was the proximate cause of his death. The defendant tried to prove that Durand was intoxicated and that he assumed the risk of touching the tree, that he knew or should have known that since he was wet he was a conductor of electric current. Nevertheless the lower court did not believe its evidence and deciding the conflict, as to the manner in which the accident occurred, it held as follows:

" . . . . that although the aforesaid José Vicente Durand was not a member *de jure* of the Civilian Defense as engine inspector, he had been such a member a short time before and had been appointed to serve in the Fire Department and had continued rendering his services to said department with the consent and approval of the chiefs thereof; that about 9 o'clock in the evening of that day he went with a crew of firemen to extinguish a fire in the ward Mayagüez Arriba, known as Quinta o Balboa, of the City of Mayagüez, and that while he was there performing his duty with the other firemen, upon resting his hand on a tree which was on fire and raising a *machete* which he held in the other hand, seemingly with the intention of cutting down said tree, or a limb hanging therefrom, he fell down dead by reason of the current which was transmitted to said tree from the wires of defendant's lines which were broken and resting on a limb of said tree about twelve feet from the ground where Mr. Durand was standing.

"Mr. Durand was at that moment occupying a place where he had a right to be, he was in a normal state and he had no other purpose than rendering a disinterested service to the community.

  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"The defense of contributory negligence on the part of the deceased alleged in the answer is not warranted herein, in the opinion of the court, by the evidence . . . . He worked as a salesman in a shoe store. There is no evidence either that he was aware of the risk or danger which he was running in touching the tree. He did not touch the wires charged with the electricity which were above the place where he put his hand on the tree. Perhaps he did not choose the best way of cutting down the tree in order to ward off the menace which the tree on fire meant to the nearest house. But in no manner did his 'act constitute a voluntary exposition to an apparent or real danger which was or would have made him 'incur in contributory negligence.

"Undoubtedly, the proximate cause of the accident was the fault and negligence of the defendant in turning on the current without removing the fallen lines or repairing the lines damaged during the storm, thereby assuming the risk of the damages which were caused as a result of its conduct. If there was any negligence on the part of the deceased . . . . it did not interfere with the proximate cause of the accident nor would it lessen and much less justify the conduct of the defendant and its liability as a consequence thereof."

The cases cited by the appellant are distinguished from the case at bar by the fact that in those cases the contributory negligence of the injured person lay in the fact that he unnecessarily and knowingly touched or took in his hands live wires which had broken down. But even in situations like this it all depends on the facts proven in each particular case and whether the trial court believes said evidence. *Mangual* v. *Municipality*, 63 P.R.R. 140; *Heirs of Matheu* v. *Municipality*, 56 P.R.R. 514.

In our opinion the lower court did not err in deciding the defense of contributory negligence against the defendant.

The judgment must be affirmed.